IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEVIN KING, GX-5862,  )
Petitioner,  )
  )
v.  ) 2:11-cv-1023
  )
MICHAEL HALL, et al.,  )
Respondents.  )

MEMORANDUM and ORDER

Mitchell, M.J.:

Kevin King has presented a petition for a writ of habeas corpus. For the reasons set forth below, the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

King is presently serving a forty-eight to ninety-six month sentence imposed following his conviction by the court of sexual assault, indecent assault and unlawful restraint at No. CP-02-CR-7009-2005 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on January 8, 2007.[1]

An appeal was taken to the Superior Court in which the issues presented were:

> I. Whether the evidence presented by the Commonwealth was sufficient to prove beyond a reasonable doubt that appellant was guilty of Sexual Assault.
>
> II. Whether the evidence presented by the Commonwealth was sufficient to prove beyond a reasonable doubt that appellant was guilty of unlawful restraint.
>
> III. Whether the evidence presented by the Commonwealth was sufficient to prove beyond a reasonable doubt that appellant was guilty of indecent assault.
>
> IV. Whether the verdicts of guilt of sexual assault, unlawful restraint and indecent assault were against the weight of the evidence.[2]

---

[1] See: Petition at ¶¶1-6.
[2] See: Answer at p.40 (all references to pages in the answer are to the "Bates" numberings).

On May 28, 2008 the judgment of sentence was affirmed.[3] A petition for allowance of appeal to the Pennsylvania Supreme Court was filed raising these same issues[4] and on July 25, 2008, King moved to withdraw his petition.[5]

A post-conviction petition was filed and dismissed on May 4, 2009 as being unsupported by the record.[6] An appeal was taken to the Superior Court in which the issues presented were:

> I. Did the trial court err in denying defendant's petition for post-conviction relief where defendant alleged trial counsel's ineffectiveness for failing to call witnesses who were available to testify to impeach [the victim's] testimony that the assault took place until 6:00 pm?
>
> II. Did the trial court err in denying defendant's petition for post-conviction relief wherein defendant alleged trial counsel's ineffectiveness for advising defendant to proceed with a bench trial without advising defendant that the trial court had revoked defendant's bond the prior week after defendant was charged with violently assaulting another woman?[7]

On September 10, 2011, the denial of post-conviction relief was affirmed.[8] A petition for allowance of appeal to the Pennsylvania Supreme Court nunc pro tunc was filed; the request for a delayed filing was granted; ultimately a petition raising these same issues was filed on February 2, 2011 and allowance of appeal was denied on July 19, 2011. [9]

The background to this prosecution is set forth in the May 28, 2008 Memorandum of the Superior Court:

> [O]n or about the 1st day of April, 2005, Appellant phoned a wrong number that was answered by a woman known for our purposes as CC. The two began to talk and ultimately met that same night at a local bar situated on the North Side of Pittsburgh. From the phone conversation, CC "felt comfortable" with Appellant and became interested in pursuing a relationship once the two met face-to-face. On April 9, 2005, CC received a second phone call from Appellant at approximately 5:00 a.m. asking if she wanted to spend the day together, which would encompass going on Appellant's boat at 5:00 p.m. to 6:00 p.m. and then to church from 7:00 p.m. to 9:00 p.m. CC agreed and Appellant drove immediately to her residence to transport her back to his East Liberty home.

---

[3] Id. at pp.86-95.
[4] Id. at p.106.
[5] Id. at p.98.
[6] Id. at p.180.
[7] See: Document 16-1.
[8] See; Answer at pp.283-292.
[9] Id. at pp. 295,306,353

2

Appellant and CC were engrossed in their own affairs during the morning session – Appellant tended to his real estate business, while CC was consumed with washing the laundry she had brought with her and creating an "outline" to study for an impending college final. CC also phoned her girlfriend the same morning to announce what she would be doing that day, "that [she] had met the most wonderful man in the world[,]" and she was "excited" about being with Appellant, a business man with his own office. CC had no trepidations about Appellant – she trusted and felt comfortable with him… In fact, CC thought Appellant was the "greatest." And she was impressed with the man, his office, his work, and his home.

CC began having reservations about the planned boat excursion and church attendance after seeing a bottle of alcohol on Appellant's table, which he dismissed by stating, "he needs a little drink to unwind." The next observation made by CC was Appellant's use of marijuana, which "shocked" her in tandem with alcohol that early in the morning, but she did not let the matter faze her. However, when Appellant told CC that at 2:00 p.m. his nephew was arriving to use his vehicle, she questioned how they were going to make their way to the boat and church, to which Appellant responded, "[W]e'll be alright, we don't need a car."

CC became "uncomfortable" with the situation and demonstrated her dissatisfaction by placing her shoes on, which prompted Appellant to inquire about her behavior. CC replied, "I'm ready to go because this is not what I came here for." Appellant told CC "no," and he attempted to lie on top of her while stating that he smoked crack cocaine all night. This pronouncement by Appellant "scared" CC. Once Appellant got off CC, he retrieved a pipe and crack cocaine before returning to the couch to sit next to her. Appellant then told CC that he wanted her to smoke crack cocaine while he performed oral sex on her. CC declined the invitation. Nonetheless, Appellant blew smoke into CC's mouth to teach her how to use the drug. With this conduct, CC knew she was in trouble, and she stated, "I didn't come here for none of this, […] I want to go home. When CC also began to cry, Appellant gave her three opportunities ("three strikes") to cease. Upon reaching the "third strike," Appellant told CC, "You will die. I'm going to take your head. I'm going to smash it all over this house, all over this floor. You will die on the third strike." Appellant gave CC her "second strike" when she refused to perform oral sex. Thereafter, CC described Appellant's demeanor thusly: "He just said, bitch, you know you're going to die. […] I didn't know what point or what time I was supposed to die or when I was going to die, so I did everything. Consequently, CC was "scared" of Appellant and feared that he might produce a gun or knife if she refused to engage in oral sex.

At some point Appellant left CC on his couch to get more cocaine located in another portion of his home, but upon his return she caused him to state, "[Y]ou're on your third strike, bitch, now I'm going to kill you." Hearing this threat, CC ran to the front door, with cell phone in hand, and called her sister and

3

said, "[P]lease come and get me, please help me, just get me out of here." Appellant pursued CC and blocked her access to the door, all the while yelling profanities. Thereafter, Appellant directed CC to leave, and he drove her to a nearly gas station where she phoned her sister for a ride. CC notified the police of the incident after her arrival home (footnotes and record references omitted).[10]

The instant petition was executed on August 8, 2011, and in it King contends he is entitled to relief on the following grounds:

1. Petitioner was denied his right to a jury trial due to trial counsel's ineffectiveness.
2. Trial counsel was ineffective where he failed to call available witnesses including the original responding officers to demonstrate the assault could not exist as alleged.
3. Conviction for sexual assault invalid [in that his acquittal of count1 i.e., involuntary deviate sexual intercourse warrants a conclusion that no force was employed].[11]

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

---

[10] Id. at pp.86-89.
[11] See; Petition at pp.5-10.

4

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...
>
> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

That is, the state court determination must be objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855 (2010).

It would appear that the first two issues which the petitioner seeks to raise here, namely that counsel was ineffective for waiving a jury trial and for failing to call available witnesses who would testify that the assault did not occur were raised in the post-conviction proceedings. King's third issue that his conviction for sexual assault is invalid as inconsistent with his acquittal of involuntary deviate sexual intercourse has never been raised in the courts of the Commonwealth and for this reason he has failed to exhaust the available state court remedies on this ground. However, since he can no longer raise that issue in the state courts a procedural default has occurred. In Coleman v. Thompson, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Because no such showing is made here, the petitioner has failed to employ the available state court remedies on this issue and no further consideration of it warranted here.

The first issue which the petitioner properly raises here is that counsel was ineffective for permitting him to proceed with a non-jury trial.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197

6

(3d Cir.2010). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

The gravamen of the petitioner's claim regarding his election to proceed with a bench trial is not that the court failed to explain his rights adequately, but that counsel was ineffective in not informing him that the trial court had revoked his bond after learning of other sexual assault charges which were pending against him. At the post-conviction hearing, petitioner testified that at the time he elected to proceed with a non-jury trial he was unaware that the trial judge had revoked his bond as a result of other pending sexual assault charges (TT.1/16/09 p.29) and that had he been aware of the action of the trial judge he would not have waived his right to a jury trial (TT.1/16/09 pp.29,31)

The Due Process Clause assures litigants of access to an impartial judge. "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness." In re Murchison, 349 U.S. 133, 136 (1955). However, "most matters relating to judicial disqualification d[o] not rise to a constitutional level" FTC v. Cement Institute, 333 U.S. 683, 702 (1948). Nevertheless, a judge has a duty to recuse when he/she has "a direct, personal, substantial, pecuniary interest" in the proceedings. Tumey v.Ohio, 273 U.S. 510, 523 (1927). See also: Caperton v. A.T.Massey Coal Co. Inc. 129 S.Ct. 2252, (2009). While no such instance occurred here, the petitioner claims that he would not have consented to a bench trial had he been aware of the fact that the trial judge had some prior knowledge about his background.

In reviewing this claim, the Superior Court observed,

> Appellant has not demonstrated that he would not have waived his right to a jury trial but for the fact that trial counsel failed to advise him of the trial court's knowledge of the other charges against him, while Appellant proffered a self-serving assertion during the PCRA hearing that he would have elected a jury trial but for trial counsel's alleged omission, Appellant failed to present any evidence regarding the extent of his discussions with trial counsel before he decided to for[e]go a jury trial. Hence, Appellant did not provide the PCRA court any context to determine the extent of counsel's alleged misstep on Appellant's ultimate decision. Thus, mindful of the PCRA court's obligation to examine all of the circumstances surrounding the waiver as a whole to determine whether Appellant's waiver was voluntary, we find no basis for relief…

> Moreover, the PCRA court concluded that Appellant's claim failed because, as the fact-finder during the trial, it did not consider the unrelated charges the Commonwealth had leveled against him or any other inadmissible evidence in determining Appellant's guilt in this case.[12]

The factual determinations made by the state courts that the petitioner had failed to make any showing that his decision to proceed with a bench trial would have been otherwise had he been made aware of the matters before the trial court in another criminal case, and his failure to demonstrate that the trial court was in any way biased in disposing of his pending case are binding here and draw full support from the record. 28 U.S.C. §2254 (e)(1). Thus, his allegation that his waiver of a jury trial was not knowingly, intelligently and voluntarily entered or that counsel was ineffective for failing to inform him about the judge's involvement in other criminal matters involving the petitioner is not contrary to federal law or involves an unreasonable application of that law and does not provide a basis for relief here.

The petitioner's final claim arises as a result of his allegation that counsel was ineffective for failing to call his sister and brother to testify as defense witnesses. At the post-conviction hearing held on January 16, 2009, it was represented that the petitioner's trial attorney had died (TT.1/16/09 p. 42).

Sandra King, the petitioner's sister testified that she saw the defendant and the victim around 1 p.m. on April 9, 2005 at which time they were entering the petitioner's car (TT. 1/16/09 pp.4-5); that she did not observe the victim at any other time that day (TT.1/16/09 p.7); that she never spoke to the defense attorney about her "alibi" testimony, was never called to testify for the defense and was available in the courtroom to testify (TT.1/16/09 pp. 7,8,11).

The petitioner's brother testified that he saw the petitioner at around 10 a.m. on the date of the incident (TT.1/16/09 p.19).

Sally Sparrow testified that she saw the petitioner when he returned to his house at 7:30 p.m. on the day of the incident (TT. 1/16/09 pp.15,16).

At the post-conviction hearing the petitioner testified that he had provided his counsel with the above alibi witnesses' names (TT.1/16/09 p.24-26); that the victim had testified at trial that the assault ended about 6 p.m.(TT.1/16/09 p.27); that he had informed his attorney that the alibi witnesses were available in the courtroom (TT.

---

[12] See: Docket entry 16 at pp.9-10.

1/16/09 p. 28) and that he testified at trial that he had dropped the victim off between 1:00 p.m. and 1:30 p.m. on the day in question (TT.1/16/09 p.35).

Citing to the opinion of the post-conviction court, the Superior Court on September 10, 2010 wrote:

> Even assuming Mr. and Ms. King's testimony would have effectively and fully impeached [the victim's] testimony with regard to the timeline of the events, such impeachment would not have changed the verdict. The evidence presented by the Commonwealth was sufficient to sustain [Appellant's] conviction for [s]exual [a]ssault, [u]nlawful [r]estraint, and [i]ndecent assault. While [the victim's] testimony was important, the court did not determine [Appellant's] guilt in mere reliance on [her] testimony alone. Rather, it was the other trial testimony and specifically [Appellant's] testimony which colored the events for this court. As this court noted, [Appellant's] "testimony on the witness stand … demonstrated that there is a rise to anger that is apparent in [Appellant's] demeanor, and also there [are] … circumstances that … lend … incredibility to [Appellant's] version [of the events]. Trial Transcript [, 10/10/06,] at 141…. Thus, even if … this court, acting as the trier of fact, believed Mr. and Ms. King's testimony that would have purportedly discredited [the victim's] testimony regarding the timeline of the events, that would not have undermined the Commonwealth's theory of the case, nor would it discredit the other evidence previously mentioned. Given this, Mr. and Ms. King were not really crucial witnesses who would have made a measurable difference. Therefore, there is no reasonable probability that the verdict would have been different.[13]

Thus, the failure of the "alibi" witnesses to testify according to the fact-finder would not have changed the verdict and for this reason the claim does not satisfy the prejudice standard of the ineffective assistant claim.

Because the allegations of the petitioner fail to demonstrate that his conviction was secured in a manner contrary to or involved an unreasonable interpretation of federal law as determined by the Supreme Court, he is not entitled to relief here. Accordingly, the petition of Kevin King for a writ of habeas corpus will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.

---

[13] See: Document 16-1 at p.7.

ORDER

AND NOW, this 22nd day of November, 2011, for the reasons set forth in the foregoing Memorandum,

IT IS ORDERED that the petition of Kevin King for a writ of habeas corpus is dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is denied.

s/ Robert C. Mitchell<br>
United States Magistrate Judge